Viertel v. Viertel.

---

---

JOHN F. VIERTEL, Appellant and Respondent, v. ELIZABETH VIERTEL, Respondent and Appellant.

### Kansas City Court of Appeals, February 4, 1901.

1. **Divorce: ADULTERY: CONNIVANCE.** Evidence is reviewed and found to show that plaintiff with the view to securing a substantial cause for divorce connived at the adultery of his wife and is not, therefore, entitled to divorce.

2. ——: ——: **GUILTY.** It is further held on the evidence that the wife was guilty of adultery and so not entitled to divorce.

Appeal from the Cooper Circuit Court.—*Hon. Thomas B. Robinson*, Judge.

AFFIRMED.

*John Cosgrove* and *James W. Cosgrove* for appellant.

(1) The trial court erred in not granting plaintiff a divorce on the ground of indignities. Wheeler v. Wheeler, 63 Mo. App. 300; Dawson v. Dawson, 23 Mo. App. 175. (2) The court erred in not granting plaintiff a divorce on the ground of adultery. The evidence amply sustained the charge. R. S. 1899, sec. 2927. (3) Plaintiff's action can not be defeated even if he is guilty of isolated indignities. Mahn v. Mahn, 70 Mo. App. 342; Kempf v. Kempf, 34 Mo. 211; Cannon v. Cannon, 17 Mo. App. 390; Griesdieck v. Griesdieck, 56 Mo. App. 100; Hoffman v. Hoffman, 43 Mo. 551. (4) The evidence does not sustain defendant's charge of connivance, or of cohabitation as alleged; nor was the plaintiff connected, by competent evidence, with any offer of reward for defendant's seduction. 1 Nelson on Divorce and Sep., secs. 485, 489.

*W. S. Shirk, C. D. Corum* and *W. M. Williams* for defendant.

(1) Plaintiff was not entitled to a divorce. The court below properly dismissed his bill. (2) The charge of adultery with Derendinger is not sustained by the evidence. The testimony introduced in support thereof should not receive any credence from this court. (3) Plaintiff is not entitled to a divorce even if every word of the testimony offered by him should be believed. His conduct was not that of a husband, jealous of the honor of his family, and seeking to avoid the reproach brought upon him by a faithless wife. 2 Bishop on, Marriage and Div., sec. 5; 2 Nelson on Div. and Sep., secs. 475, 477; Wilson v. Wilson, 12 L. R. A. 524; Herrick v. Herrick, 31 Mich. 298; Morrison v. Morrison, 136 Mo. 310; Pierce v. Pierce, 20 Mass. 299. (3) A divorce can not be granted to plaintiff on the ground of indignities.

SMITH, P. J.—This is an action for divorce. The grounds therefor as alleged in the petition were adultery and personal indignities. The defendant met these allegations with a general denial coupled with a cross-petition specifying certain indignities and praying for a divorce from plaintiff. There was a trial of the cause which resulted in a judgment dismissing both the petition and cross-petition, and from which judgment both parties have prosecuted an appeal here.

The salient features of the case disclosed by the evidence are extremely hideous and repulsive. We are compelled to give an attentive, though unwilling ear, to the story of a stormy, turbulent and unhappy married life. If half of the testimony of the witnesses is to be believed the married life of these parties was one which was only noteworthy for its wickedness and depravity. It seems that for years before their separation each party was despicable in the sight of the other. And the plaintiff had, for several years before that event, contemplated a divorce, and to that end had sought the advice of counsel.

He was engaged in farming on a considerable scale and employed and kept about him from time to time a number of hands to assist in running his farm. Among these was a Switzer by the name of Derendinger. It appears from the plaintiff's own testimony that some time after Derendinger entered his employment that certain occurrences witnessed by him had given rise to the suspicion that the latter was on terms of criminal intimacy with the former's wife. One day after Derendinger had been in the employment of plaintiff for about a year, and while the two were engaged in sowing wheat, the plaintiff said to Derendinger: "There must be something wrong between you and her (defendant) because you stay too long at the house," and to which the latter replied: "That is right." It appears that when the suspicions of the plaintiff were thus confirmed—when Derendinger confessed to him that he had debauched his wife—instead of wreaking his vengeance

Viertel v. Viertel.

cn him, as would naturally be expected he would on one who had by his confessed adultery brought ruin and disgrace and shame upon himself and family, he contented himself with the remark: "I never thought that of you." Notwithstanding Derendinger's confession, the plaintiff manifested not the slightest indignation or resentment, but continued him in his service for several weeks afterwards, during which time he worked side by side with plaintiff in the field, sat at the latter's table with his wife and child and himself, slept in his house and was treated with the same consideration as if nothing unusual had taken place. It appears further from the testimony of Derendinger that during the time that intervened between his confession and that when he left the plaintiff's employment that he continued, without interference, his adulterous relations with the defendant. It does not appear that the plaintiff even as much as reproached the defendant for her infidelity, or even told her of Derendinger's confession, or that he in any way made known to her his disapproval of her immoral conduct.

It further appears from the concurrent testimony of both plaintiff and Derendinger that the latter became alarmed lest he might be criminally prosecuted for his confessed adultery and consulted the plaintiff as to what was best for him to do under such circumstances. The plaintiff thereupon referred him for advice to the very counsel that he himself had retained to procure for him a divorce and that he accordingly did consult such counsel. After advising with the plaintiff's counsel, Derendinger communicated the result to the plaintiff. It seems that after this suit was brought Derendinger concluded to leave the country and of this fact the plaintiff became apprised in time to take his deposition, which was read at the trial. The relations of the plaintiff and Derendinger were during this time of a very friendly nature. After the taking of the depo-

sition, he and plaintiff met in a saloon and had a social glass together. The plaintiff and defendant occupied adjoining rooms in their house with a partition door between them. According to Derendinger's testimony, during the fourteen months that he was in plaintiff's employment he visited the defendant in her room at least twice a week, as early as seven or eight o'clock in the evening, entering the same through a window and there remaining with her for hours at a time when the plaintiff was in the adjoining room.

Now, coupling with these facts the further conceded fact that the plaintiff was anxious to obtain a divorce from the defendant and was looking for grounds on which to base his claim therefor, what is the inference, if any, to be deduced therefrom? Do not these facts justify the inference that the plaintiff connived at the criminal intimacy between Derendinger and his wife? If the plaintiff did not shut his eyes to what he in the first instance had reason to know, and later on did know, was going on between Derendinger and his wife under his own roof, why did his friendly relations with Derendinger remain during all that time undisturbed? If he did not consent to or acquiesce in the criminal acts of his wife and Derendinger, which he knew had taken place and was taking place within the sacred precincts of his own home, why was there no protest, no disapproval uttered, to one or both of them? The conduct of the plaintiff in such circumstances was inconsistent with that of a man who was jealous of his own honor and that of his family. By his conduct he exhibited a depravity not less than that of his faithless wife. It is inconceivable that any man, jealous of the honor of his family and the sanctity of his own home, would have tolerated the presence there of the man whom he knew had debauched and defiled his wife. Connivance at such conduct as that which the evidence tends to prove Derendinger and defendant were guilty of, is rarely susceptible of direct proof. It is most generally

to be established by inference from other facts. The inference to be drawn from the facts to which we have adverted is quite irresistible that the plaintiff must have entered into some scheme or understanding with Derendinger by which the latter was to compass the defendant's ruin, and then testify to the fact and thus afford the plaintiff a substantial cause for divorce. The plaintiff's behavior can not be accounted for on any other hypothesis.

It is further disclosed by the evidence that Pearl Jackson, a negro girl employed by the plaintiff in his family in the capacity of cook, testified that she on several occasions saw the defendant after nightfall enter Derendinger's room through a window and there remain for some time; and that she also saw the latter, on several other occasions, enter the former's room and there remain with her for a considerable time; and that on a certain other occasion she saw the defendant and Derendinger in a very compromising position. She further testified that while Derendinger was still in plaintiff's employ, residing with him under his own roof, that she had told him—plaintiff— what she had seen, so that there can be no doubt that the plaintiff was fully apprised of the criminal intimacy existing between Derendinger and the defendant while he—Derendinger —was in his employ and living in his family. Although the plaintiff was thus made aware of the criminal intimacy between Derendinger and the defendant, he uttered no words of protest to his wife or her paramour against their conduct, nor did he take any steps to put an end to the same, but kept Derendinger in his employ as if nothing had happened that was displeasing to him.

It seems to us that there is little or no doubt that the evidence is quite sufficient to authorize the inference that the plaintiff was willing in his own mind that his wife should commit adultery, provided he could thereby obtain a divorce. He certainly expected she would commit adultery with Derendin-

ger and that he should obtain proof of it and thus be enabled to get a divorce.    This state of the plaintiff's mind, together with his conduct towards his wife and her paramour after his suspicions must have been excited, are, we think, ample to justify the finding of connivance.    Morrison v. Morrison, 136 Mass. 310, and authorities there cited.

It indubitably appears from the evidence that during the time plaintiff and defendant lived together, that the plaintiff occupied a very unhusbandlike and unfriendly attitude towards the defendant as his wife and that he was extremely anxious to have the marriage relations dissolved.    On one occasion while the plaintiff and defendant were living together as husband and wife one Brown threatened the defendant with violence, and in order to compel him to keep the peace she caused him to be arrested and brought before a justice of the peace where the plaintiff appeared and became his surety on his bond for his subsequent appearance at the trial.    Instead of espousing the cause of his outraged wife he chose to knowingly aid and abet her enemy.    Besides this, during that time he spoke of her to others in the most disrespectful and contemptuous terms, calling her vile names.

Allusion is made to these facts to show that instead of treating defendant as his wife with kindness and affection, as was his duty, he let no opportunity pass to humiliate and dissatisfy her with her married life.    It seems to have been the settled purpose of the plaintiff to in some way rid himself of this frail and erring woman as his wife.    He does not appear to have been overly scrupulous as to how this was to be accomplished.    In view of these facts, how can any court conclude that the plaintiff has faithfully demeaned himself and performed all his duties as the husband of the defendant, or that he is the injured and innocent party?

There is other testimony contained in the abstract which further tends to prove the defendant guilty of adultery and of

State to use v. Hudson.

such misconduct as disentitles her to a divorce.    The action of the court in admitting certain testimony and rejecting offers of other testimony is made the basis for the assignment of a number of errors, but it is wholly unnecessary to notice them for the reason that no matter how ruled, the result would not be different.

No court, with such evidence before it as is presented by the record in this case, would be authorized to grant a divorce to either party.    As said in a Massachusetts case (Pierce v. Pierce, 3 Pick. 299):   "As we are clear that the adultery proved was committed with the knowledge and consent of the plaintiff and probably with his connivance, a divorce will not be granted."    It seems to us that the decree of the trial court was the only one that was authorized by the evidence and it must accordingly be affirmed.    *Ellison, J.,* concurs; *Broaddus, J.,* not sitting.